## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. MYEISHA THOMPSON, individually and on behalf of all similarly situated persons,<br><br>          Plaintiff,<br><br>v.<br><br>1. ADT, LLC D/B/A BLUE BY ADT<br><br>          Defendant. | Case No. __CIV-21-432-G___<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Myeisha Thompson ("Ms. Thompson"), on behalf of herself and all similarly situated persons, brings this Class Action Complaint against Defendant ADT, LLC, d/b/a Blue by ADT ("ADT"), based upon her personal knowledge and the investigation of her counsel, and alleges the following:

### INTRODUCTION

1.     This is an action to recover damages from ADT for the harm it caused Plaintiff and a nationwide class of persons whose personal privacy and security have been violated by ADT's misrepresentations, negligence and failure to provide the security services that its customers bargained for, which misrepresentations, negligence and failure resulted in the compromise of Plaintiff's and other customers' privacy and protection within the walls of their own homes.

2.     Through this action, Plaintiff seeks relief on behalf of herself and the "Class" (as defined below) in the form of actual damages, statutory damages, punitive damages,

declaratory and injunctive relief, attorney's fees and costs incurred in bringing this action, and all other remedies this Court deems just and proper.

## PARTIES

3.      Plaintiff Myeisha Thompson is, and at all relevant times to this action was, a natural person and a citizen of the State of Oklahoma, residing in the City of Oklahoma City, Oklahoma County, Oklahoma.

4.      Defendant ADT, LLC is a foreign limited liability company incorporated in Delaware and headquartered at 1501 Yamato Road, Boca Raton, Florida 33431. ADT, LLC was the name of the surviving party in a merger with ADT Corporation in September 2014.

5.      At all times relevant to Plaintiff's claims and allegations, ADT, LLC was doing business as one of many subsidiary companies under the name "Blue by ADT."[1]

6.      Plaintiff entered into a contract with Defendant to lease security equipment in this District; Plaintiff also received installation and account setup instructions from Defendant while in this District, which equipment is currently located in this District. Plaintiff made payments to Defendant from this District.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy is believed to exceed $5 million, exclusive of interest and costs. There are believed to be more than 100

---

[1]      https://www.bluebyadt.com/shop/?cid=7016f00000237Yg&gclid=EAIaIQobChMI-5y8jIWl8AIV4To4Ch2ZHwaDEAAYASAAEgJRt_D_BwE&gclsrc=aw.ds (last accessed April 28, 2021).

putative class members and at least some members of the proposed Class have a different citizenship from ADT.

8.    This Court has personal jurisdiction over ADT because it regularly conducts business in Oklahoma and in this District, as described herein.

9.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events and omissions giving rise to this action occurred in this District and ADT has caused harm to Class Members residing in this District.

## STATEMENT OF FACTS

### A. ADT's Promise of Privacy and Security

10.    ADT is a residential and business security company that touts its longstanding expertise in providing security systems and monitoring, claiming to be "easy to trust" as "America's #1 smart home security provider."[2]

11.    ADT markets, sells, and leases a comprehensive home security system package that includes security cameras referred to by ADT as its "most advanced home security cameras" to "[h]elp protect your home, inside and out…."[3]

---

[2]https://security.adt.com/d/secureyourhome/?gclid=EAIaIQobChMIu9eSr6Wh8AIVXmp vBB3GSgUbEAAYASAAEgIJgfD_BwE&utm_adgid=89607063548&utm_adid=471649 877232&utm_adpos=&utm_cmpid=7620267815&utm_devicemdl=&utm_dvc=c&utm_f eeditemid=&utm_locintid=&utm_locphysid=9026255&utm_medium=cpc&utm_mt=e&u tm_ntwk=g&utm_plcmnt=&utm_plcmnttgt=&utm_source=google&utm_term=adt&utm _tgtid=kwd-12651591 (last accessed April 28, 2021).
[3] https://www.bluebyadt.com/shop/blue-security-cameras/ (last accessed April 28, 2021).

12.    ADT's indoor security cameras let the customer "[v]iew and talk to anyone inside [their] home"[4] and include special features such as two-way talk with noise cancellation, night vision, a fire/carbon monoxide siren detector, custom motion detection zones, battery backup, and facial recognition.[5]

13.    The indoor security cameras are marketed by ADT as an enhancement to a home's security, providing customers with alerts if motion is detected in the home.[6] However, such video monitoring and recording (the "Security Camera Footage") is only to be activated when (i) the armed system is triggered,[7] and (b) the customer has obtained an alarm permit from the local municipality (if required). *See* **Exhibit 1**.

14.    Customers may also choose to remotely stream live Security Camera Footage of the inside of their homes to "see what's up with the roomies, check on the pup, or greet visitors – all from your phone."[8]

15.    Plaintiff and Class Members were made aware of these features but were not advised that they were being recorded by ADT. Such recordings occurred without the system being in "armed" mode, and/or before Plaintiff and Class Members had time to obtain a local permit. As a result, ADT wrongfully captured Security Camera Footage of thousands of individuals who made payments to ADT under the representation that they would not be recorded inside their homes unless there was an active emergency situation.

---

[4] https://www.bluebyadt.com/shop/blue-indoor-camera.html (last accessed April 28, 2021).

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] https://www.bluebyadt.com/shop/blue-security-cameras/ (last accessed April 28, 2021).

16.     Recordings were taken by ADT at all times during the day and, upon information and belief, were viewed by unauthorized personnel within ADT without the consent of Plaintiff and Class Members.

17.     To make matters worse, Plaintiff's and Class Members' Security Camera Footage was subsequently sent by ADT to additional unauthorized third parties outside of ADT as a result of ADT's further negligence and failures in its system maintenance, training and data security protocols.

18.     The Security Camera Footage is still in the hands of ADT, ADT employees and agents, and other unauthorized third parties who may now be distributing the videos and images (many of which depict Plaintiff and Class Members naked) on the internet.

19.     The errors and omissions described herein could have been prevented had ADT not been negligent in its failure to monitor its systems and address the various vulnerabilities in its security protocol.

20.     Because of ADT's negligence and misrepresentations to Plaintiff and Class Members, and because of ADT's security failures, Plaintiff and Class Members have already suffered and continue to suffer loss of security, loss of safety, loss of privacy, humiliation, anger, mental anguish and emotional distress resulting from ADT's shocking negligence. The mental anguish and emotional distress suffered by Plaintiff and Class Members have been manifested through physical suffering which includes but is not limited to sleeplessness, headaches, nausea, and stomach pain.

**B. ADT's Recent ADT Pulse Security Failure**

21.    ADT's system failure related to its in-home camera monitoring service is not the first time ADT has been negligent in, or breached contracts relating to, the management of its home video monitoring security system.

22.    ADT recently alerted more than two hundred (200) of its ADT Pulse customers in the Dallas-Fort Worth area that a former employee had obtained unauthorized access to their security systems over the last several years, including the video streams of in-home cameras similar to the cameras used by Plaintiff here.[9]

23.    The breach was discovered after an ADT customer reported that there was an unauthorized email address on her account with the company's ADT Pulse app.

24.    After an internal investigation, it was discovered by ADT that the email address was linked to another two hundred twenty (220) accounts, giving the employee real-time access to the video feeds from inside the customers' homes.

25.    Though entrusted with safeguarding customers' homes, ADT's employee found a way to instead intrude on customers' most intimate moments.

26.    However, considering Plaintiff's experience, it seems ADT has failed to adequately address the internal issues that exposed the ADT Pulse vulnerability, as the vulnerability here includes a company-wide failure to ensure that customer Security Camera Footage is not being streamed to unauthorized email addresses and viewed by unauthorized third parties.

---

[9] https://www.dallasnews.com/news/courts/2020/05/18/adt-sued-after-employee-accessed-more-than-200-customers-home-security-systems-in-dallas-area/ (last accessed April 28, 2021).

27.     In response to recent consumer concerns regarding ADT's security failures relating to consumer privacy, ADT declared that it was leading the industry in creating a "Consumer Privacy Initiative" to create "clear guiding principles and best practices" for how they would "manage consumer data and protect their privacy."[10] Those principles included "Privacy by Design," which promised to embed privacy "in all areas of the security industry," beginning with "the design of the products used to help protect and connect customers."[11] They also specifically included a subject on transparency, stating that providers of security products and services "must spell out in clear and understandable terms how they collect, use, share, and retain sensitive data," and that they would share audio or video only with prior consent from the customer and would otherwise never access a customer's audio or video without the customer's knowledge.[12]

28.     Clearly ADT was at all relevant times fully aware of its privacy protection obligations in light of its participation in the video-monitoring security system industry and its very own "Consumer Privacy Initiative."

29.     Indeed, ADT had actual knowledge of the vulnerabilities of its security system, and that intimate customer videos and images were being viewed by and distributed to unauthorized third parties as a direct result of these vulnerabilities.

30.     Despite this knowledge, ADT did not make the necessary changes to its

---

[10] https://www.globenewswire.com/news-release/2020/01/27/1975514/0/en/ADT-Survey-Reveals-Strong-Consumer-Expectations-for-Smart-Home-Privacy-Protections.html (last accessed April 28, 2021).
[11] *Id.*
[12] *Id.*

security practices and protocols.

31.    ADT's reckless security practices in the face of known threats and vulnerabilities permitted the improper and unlawful collection and distribution of Plaintiff's and Class Members' Security Camera Footage.

**C.  Plaintiff Thompson's Experience**

32.    On or around March 7, 2021, Plaintiff Myeisha Thompson entered into an equipment lease with Defendant, ADT, LLC, d/b/a Blue by ADT, to lease certain security system equipment that included alarm monitoring, basic camera service, and a monthly lease fee.

33.    On March 9, 2021, Plaintiff was on the phone with a Blue by ADT representative for roughly three (3) hours receiving step-by-step instructions assisting her in the self-installation of her alarm system and the setup of her personal ADT account. This setup included multiple e-mail verifications and the implementation of the system's facial recognition feature.

34.    Plaintiff was assured by ADT that the cameras would only begin recording in the event the door and/or window alarms were triggered, and that such recording could only begin once Plaintiff obtained an alarm permit from the local municipality and notified ADT of the permit.

35.    However, it was not long after the installation that Plaintiff received a telephone call from a stranger in North Carolina who gave her the terrifying news that Security Camera Footage from Plaintiff's ADT security system was being sent by ADT to the stranger without Plaintiff's knowledge. The Security Camera Footage sent to the

stranger in North Carolina, to Plaintiff's horror and disbelief, included videos and images of Plaintiff in her most private moments within her home.

36.    Specifically, the caller stated, "I'm receiving your notifications from [ADT]. I'm a mother and I am concerned because I'm receiving footage of you in your home." She also shared with Plaintiff that when she had reached out to alert ADT of the gravity of the situation, ADT told her that it was up to this stranger to track Plaintiff down and let Plaintiff know what was happening: "Maybe she has a Facebook," ADT suggested.

37.    Interestingly, ADT did reach out to Plaintiff to let her know her bill payment was due.

38.    The cameras, which were only supposed to be recording at the times when the door and/or window alarms were triggered, had instead been capturing video and pictures of Plaintiff while going about her normal routine, in some instances naked, in her home. This Security Camera Footage also included Plaintiff's three-year old granddaughter, exposing them both to the world at large.

39.    The stranger in North Carolina first began receiving Plaintiff's Security Camera Footage to her personal email on or around March 10, 2021, only one day after Plaintiff installed the cameras and set up her account with ADT (and before she had time to obtain the required alarm permit).

40.    Despite having direct knowledge of these horrifying events and breach of Plaintiff's privacy, ADT did not reach out to Plaintiff directly to update her on the status of these very serious issues or offer her relief from the nightmare she is now living. However, one ADT sales representative, having seen Plaintiff's story about these events

on a news broadcast,[13] did have the moral decency to at least contact the news station covering Plaintiff's story to apologize to Plaintiff.

41.    In an apology that should have come from ADT, the sales representative stated:

> "First, I'd like to address the fact ADT has not reached out to [Plaintiff.] I apologize for this and the lack of communication and urgency. I want to make this right for Myeisha immediately. Second, I am more than happy to meet with Myeisha in OKC and get rid of her ADT Blue System and talk with her about the issues. At this point I wouldn't want to use ADT either. I just want Myeisha to know that I am personally sorry for our system failure and I hope I or ADT can make this right. Please forward this information to Myeisha and let her know I am thinking about her and her family."

42.    Plaintiff and the Class share the ADT representative's hope that ADT will "make this right" and resolve the very traumatic and damaging impact its system failure has had on their lives.

43.    Only after Plaintiff's legal counsel visited with the ADT sales representative did an executive of ADT reach out to contact Plaintiff and attempt to belatedly apologize.

44.    ADT had full knowledge of the purpose for which its security cameras were being used by Plaintiff and the sensitivity of the people and things the cameras were designed to secure and protect. ADT also knew the types of harm that Plaintiff could and would suffer if the integrity of the security system was compromised.

45.    ADT failed to limit the recordings to moments when the alarm was

---

[13] https://kfor.com/news/local/north-carolina-woman-says-security-company-told-her-to-contact-oklahoma-woman-herself-after-receiving-her-home-footage/ (last accessed April 28, 2021).

triggered, as it agreed and represented to do, and instead chose to record Plaintiff and family members, including her three-year-old granddaughter, within the privacy of her home at all times (believed to be 24 hours a day). ADT employees and other unauthorized parties had access to this Security Camera Footage without Plaintiff's knowledge or consent.

46.    Plaintiff and Class Members have been injured because of ADT's shocking invasion of customer privacy.

**D. Plaintiff and Class Members Suffered Damages**

47.    As alleged throughout this Complaint, Plaintiff and Class Members have suffered injuries in fact that are traceable to ADT's negligence, deceit, misconduct and system failures and such injuries are likely to be redressed by a favorable judicial decision.

48.    The Security Camera Footage of Plaintiff and Class Members is of the most private and sensitive in nature and was left inadequately protected by ADT. This is inexcusable.

49.    ADT did not obtain Class Members' consent to create or share their private, personal Security Camera Footage with any other person, as required by the applicable contracts, law, and industry standards.

50.    Plaintiff's and Class Members' highly unfortunate and offensive experiences with ADT's security system, and the damages resulting therefrom, are a direct and proximate result of ADT's failure to abide by the representations it made to Plaintiff and Class Members, and its failure to properly safeguard and protect Plaintiff's and Class Members' Security Camera Footage from unauthorized access, use, and disclosure, as

required by contract, industry practices, and applicable law.

51.     ADT also failed to establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiff's and Class Members' Security Camera Footage to protect against reasonably foreseeable threats to the security or integrity of such information.

52.     ADT had the resources to prevent the disclosure of the Security Camera Footage. ADT made significant expenditures to market, promote, and sell its home security product and services, but neglected to adequately invest in training, protocol, and data security measures, despite a growing number of similar issues within the industry.

53.     Had ADT remedied these known deficiencies in its home security system and provided its employees with proper training and supervision, ADT would have been able to prevent the incidents leading to the eventual compromise of Plaintiff's and Class Members' confidential Security Camera Footage.

54.     As a direct and proximate result of ADT's wrongful actions, inactions, and system failures, Plaintiff and Class Members have been placed at an imminent, immediate, and continuing increased risk of harm, requiring them to take time (which they otherwise would have dedicated to other life demands such as work and family) in an effort to mitigate the actual and potential impact of the exposure of their Security Camera Footage to unauthorized third parties. This time has been lost forever and cannot be recaptured.

55.     ADT's wrongful actions and inactions directly and proximately caused the theft and dissemination to unauthorized third parties of Plaintiff's and Class Members' Security Camera Footage, causing them to suffer, and continue to suffer, economic and

noneconomic damages and other actual harms, including but not limited to humiliation, embarrassment, stress, and anxiety, for which they are entitled to compensation. These wrongful actions and inactions, and other damages resulting therefrom, include:

a.  the lack of any notification to Plaintiff and Class Members by Defendant of its negligence, deceit, system failure and distribution of the Security Camera Footage to unauthorized viewers;

b.  the improper disclosure of Plaintiff's and Class Members' Security Camera Footage;

c.  loss of privacy;

d.  ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the improper disclosure of their Security Camera Footage;

e.  ascertainable losses in the form of deprivation of the value of their home security system;

f.  ascertainable losses in the form of the loss of their inability to use ADT's home security system due to the system failures alleged herein;

g.  the loss of productivity and value of their time spent to address, attempt to ameliorate, mitigate, and deal with the actual and future consequences of the ADT system failures, including the fears, inconvenience, nuisance, stress, mental anguish, and annoyance of dealing with all such issues resulting therefrom.

56.    While the Security Camera Footage of Plaintiff and Class Members has

been wrongfully recorded and subsequently distributed to and viewed by unauthorized third parties, ADT continues to hold the Security Camera Footage, including that of Plaintiff and Class Members. Particularly, because ADT has demonstrated a consistent inability to prevent the improper and unauthorized disclosure of the Security Camera Footage, Plaintiff and Class Members have an undeniable interest in ensuring that their Security Camera Footage is secure, remains secure, is properly and promptly destroyed, and is not subject to further unauthorized disclosure.

<u>CLASS ALLEGATIONS</u>

57.    Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

58.    Plaintiff, pursuant to Fed. R. Civ. P. Rule 23(a), (b)(2), (b)(3), and (c)(4), brings all claims as class claims and seeks relief on behalf of herself and as a representative of all others who are similarly situated, asserting claims on behalf of the following Class and Subclass (collectively, the "Class Members" or the "Class"):

Nationwide Class against ADT (the "Nationwide Class"):

> All ADT customers living in the United States whose security camera footage, including photos and video, was accessed by an unauthorized party without the consent of the account holder.

Oklahoma Subclass against ADT (the "Oklahoma Subclass"):

> All ADT customers living in the State of Oklahoma whose security camera footage, including photos and video, was accessed by an unauthorized party without the consent of the account holder.

59.    Excluded from the Nationwide Class and Oklahoma Subclass are ADT and any entity in which ADT has a controlling interest, as well as ADT's officers, directors, legal representatives, successors, subsidiaries, and assigns. The Class also excludes any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

60.    Plaintiff reserves the right to amend the above definitions or to propose alternative or additional subclasses, as necessary.

**A. Class Certification is Appropriate**

61.    The proposed Nationwide Class and Oklahoma Subclass meet the requirements of Rule 23(a), (b)(2), (b)(3), and (c)(4) as required.

62.    *Numerosity*: The proposed Class is so numerous that joinder of all members is impracticable. While the total number of individuals affected by ADT's unauthorized disclosure of Security Camera Footage is unknown, based on reporting, ADT has over six million customers,[14] each of which is at risk of having been impacted by the ADT negligence and system failures alleged herein. *See* Fed. R. Civ. P. 23(a)(1).

63.    *Commonality and Predominance*: Common questions of law and fact exist as to Plaintiff and all members of the proposed Class and Subclass. These questions predominate over the questions affecting individual Class Members. These common legal and factual questions include, but are not limited to, the following:

    a.    Whether ADT engaged in the wrongful conduct alleged herein;

---

[14] https://www.bluebyadt.com/#:~:text=Committed%20to%20privacy,trusted%20name%20in%20home%20security (last accessed April 28, 2021).

b.  Whether ADT owed a duty to Plaintiff and Class Members to adequately protect their Security Camera Footage from unauthorized disclosure, and whether it breached this duty;

c.  Whether ADT breached its contracts with Plaintiff and Class Members by recording video of them in their homes without their awareness or consent;

d.  Whether ADT's security failures violated the Federal Trade Commission Act, 15 U.S.C. § 45 (the "FTC Act"), and/or state laws and/or its other duties discussed herein;

e.  Whether ADT breached its contracts with Plaintiff and Class Members by failing to protect Plaintiff's and Class Members' Security Camera Footage from unauthorized third-party access;

f.  Whether ADT knew or should have known that its systems and protocols were unable to protect Plaintiff and Class Members from improper disclosure of their Security Camera Footage to unauthorized third parties;

g.  Whether ADT's conduct, including its failure to act, resulted in or was the proximate cause of the improper disclosure of Plaintiff's and Class Members' Security Camera Footage;

h.  Whether ADT wrongfully failed to inform Plaintiff and Class Members that it did not properly maintain its home monitoring system and security procedures and precautions sufficient to reasonably safeguard users' Security Camera Footage;

i.  Whether Plaintiff and Class Members suffered injury as a proximate result of ADT's conduct or failure to act;

j.  Whether ADT recklessly and willfully violated its duties to Plaintiff and the Class; and

k.  Whether Plaintiff and the Class are entitled to recover compensatory and punitive damages, equitable relief, and other relief, and the extent of the remedies that should be afforded to Plaintiff and the Class;

l.  Whether ADT sufficiently addressed, remedied, or protected Plaintiff and Class Members after becoming aware of its system failures, including whether it took adequate preventative and precautionary measures to ensure Plaintiff and the Class Members would not experience further harm;

m.  Whether ADT received money from Plaintiff and the Class to provide security and protection of their privacy;

n.  Whether Plaintiff and Class Members failed to receive the security and protection of their privacy that they paid for;

o.  Whether Plaintiff and Class Members are entitled to reimbursement for money ADT received from them; and

p.  Whether Plaintiff and Class Members are entitled to recover damages, equitable relief, and other relief, and the extent of the remedies that should be afforded to Plaintiff and the Class.

64.    These questions are common to all Class Members' claims and predominate over any and all individual claims that might exist. *See* Fed. R. Civ. P. 23(a)(2) and (b)(3).

65.     *Typicality*: Plaintiff's claims are typical of the claims of the Class. Plaintiff and all members of the Class were injured through ADT's uniform misconduct. The same conduct that gave rise to Plaintiff's claims is identical to the conduct that gave rise to the claims of every other member of the Class because Plaintiff and Class Members had their highly sensitive and personal Security Camera Footage compromised in the same way by the same conduct committed by ADT. *See* Fed. R. Civ. P. 23(a)(3).

66.     *Adequacy*: Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the Class that she seeks to represent; Plaintiff has retained counsel competent and highly experienced in complex litigation (particularly consumer class action litigation); Plaintiff and Plaintiff's counsel intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and her counsel. *See* Fed. R. Civ. P. 23(a)(4).

67.     *Superiority*: A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiff and the Class. The injury suffered by each individual Class Member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be difficult, if not impossible, for members of the Class to individually and effectively redress Defendant's wrongdoing. Even if Class Members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and

provides benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. *See* Fed. R. Civ. P. 23(b)(3).

68.     *Injunctive and Declaratory Relief*: Class certification is also appropriate under Rule 23(b)(2) and (c). Defendant, through its uniform conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole.

69.     Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

    a.   Whether ADT failed to timely notify and attempt to remediate the negative impact of its system failures;

    b.   Whether ADT owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their Security Camera Footage;

    c.   Whether ADT's security measures to protect its home video monitoring system were reasonable in light of industry best practices;

    d.   Whether ADT failed to take commercially reasonable steps to safeguard the Security Camera Footage of Plaintiff and Class Members; and

    e.   Whether measures recommended by data security experts would have reasonably prevented ADT's system failures.

70.     Finally, all members of the proposed Class are readily ascertainable. ADT has access through its customer database to information regarding which customers have

security camera systems installed and which of those customers have been negatively impacted in a similar way to Plaintiff as a result of ADT's system failures. Using this information, Class Members can be identified, and their contact information ascertained, for the purpose of providing notice to the Class.

## CAUSES OF ACTION

### COUNT I – NEGLIGENCE
### (ON BEHALF OF PLAINTIFF AND THE CLASS OR, ALTERNATIVELY, PLAINTIFF AND THE OKLAHOMA SUBCLASS)

71.     Plaintiff realleges and incorporates the foregoing paragraphs as though fully set forth herein.

72.     ADT provided security camera and other services available through its smartphone application to Plaintiff and Class Members in exchange for monthly payments.

73.     ADT owed a duty to Plaintiff and the Class to maintain confidentiality of the Security Camera Footage and to exercise reasonable care in safeguarding and protecting these videos and images from being viewed by unauthorized persons. This duty included, among other things, designing, maintaining, and testing ADT's networks and systems to ensure that Plaintiff's and Class Members' Security Camera Footage, which was in ADT's possession, was adequately protected in the process of collecting and storing it on ADT's systems.

74.     ADT had a duty to exercise reasonable care in ensuring that all ADT security systems were secure, safe to use, and inviolable by unauthorized parties. This duty includes, among other things, ensuring that reasonable and proper protocols and safeguards

20

are in place so that customers' Security Camera Footage is not easily accessed by unauthorized users.

75.    ADT owed a duty to Plaintiff and Class Members to implement processes that would maintain any and all Security Camera Footage confidential, preventing the unauthorized disclosure of such Security Camera Footage to third parties without the written consent of the Class.

76.    ADT owed a duty to Plaintiff and Class Members to provide security consistent with industry standards and requirements, and to ensure that Plaintiff's and Class Members' Security Camera Footage was adequately protected and kept confidential from third-party viewing.

77.    ADT knew the risks inherent in collecting and storing the Security Camera Footage of Plaintiff and Class Members on its systems, and the critical importance of providing adequate protection for the maintenance of that information.

78.    ADT, by and through its agents, employees, and independent contractors, was negligent in its acts and/or omissions by, among other things, providing a method by which its agents, employees, independent contractors, and other unauthorized third parties could access Plaintiff's and Class Members' Security Camera Footage without their knowledge or consent, thereby allowing the Security Camera Footage to be viewed, recorded, and potentially distributed further.

79.    ADT's conduct created a foreseeable risk of harm to Plaintiff and Class Members. This conduct included, but is not limited to, ADT's failure to take the steps

necessary to prevent and/or detect and mitigate the impact of the vulnerabilities in its security camera remote access capabilities, systems, employee training, and protocols.

80.    ADT knew or should have known that: (i) the Security Camera Footage of Plaintiff and Class Members contained private and confidential information about them; (ii) Plaintiff and Class Members had a reasonable expectation of privacy in being partially and fully naked, engaging in intimate activity, and having private conversation in a private home; (iii) the recording and viewing of such private activities was done without Plaintiff's and Class Members' consent; (iv) the Security Camera Footage would reveal private and personal things about Plaintiff and Class Members which ADT and other unauthorized third parties had no right or authorization to view, use, disseminate, or disclose; and (v) the viewing of these private acts and occasions constitutes a substantial violation of the Plaintiff's and Class Members' right of privacy.

81.    Beyond ordinary negligence, ADT was grossly negligent because the acts and omissions of ADT and its employees and agents were more than momentary thoughtlessness or inadvertence. Rather, the conduct at issue, when viewed objectively from the standpoint of ADT at the time of these events, involved an extreme degree of risk, considering the probability and magnitude of the potential harm that could result to Plaintiff and Class Members if their Security Camera Footage distributed to and viewed by unauthorized third parties. Moreover, ADT had subjective knowledge of the risk of employees gaining unauthorized access to customers' Security Camera Footage but failed to disclose to Plaintiff and Class Members the vulnerabilities inherent in ADT's home

camera monitoring systems and the ability of ADT employees to monitor and observe their home at all times of the day without their consent.

82.     ADT's own actions and inactions created a foreseeable risk of harm to Plaintiff and the Class. ADT's misconduct included, but was not limited to, their failure to sell security systems with sufficiently robust security protocols to prevent unauthorized users from gaining access to the cameras or to Plaintiff's and Class Members' Security Camera Footage and failing to inform Plaintiff and Class Members when new and unauthorized email addresses were added to their personal accounts, thereby granting unauthorized access to the Security Camera Footage.

83.     ADT was in a position to protect against the harm suffered by Plaintiff and the Class Members.

84.     ADT, through their actions and inactions, unlawfully breached their duty to Plaintiff and the Class by failing to ensure their cameras, systems, and setup procedures were sufficiently robust to protect against this type of highly offensive, unauthorized use.

85.     But for ADT's wrongful and negligent breach of duties owed to Plaintiff and the Class, they would not have been subjected to this horrifying, nightmarish invasion of their privacy (which is still ongoing).

86.     As a direct and proximate result of ADT's negligent conduct, Plaintiff and Class Members have been injured and are entitled to actual damages and punitive damages in amounts to be proven at trial. These damages include, but are not limited to: the costs of the services paid for but not provided to Plaintiff and the Class by ADT; mental anguish and suffering in the form of severe anxiety, loss of security, loss of safety, humiliation, and

anger; the cost of replacement cameras and security systems; the cost of additional surveillance and protective devices and services; time spent monitoring and addressing the current and future consequences of the exposure enabled by ADT; and the necessity to engage legal counsel and incur legal fees and costs.

**COUNT II – NEGLIGENCE PER SE**
**(ON BEHALF OF PLAINTIFF AND THE CLASS OR, ALTERNATIVELY, PLAINTIFF AND THE OKLAHOMA SUBCLASS)**

87.    Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

88.    Pursuant to the FTC Act, Defendant had a duty to Plaintiff and the Class to provide fair and adequate systems and data security training and protocols to safeguard the Security Camera Footage of Plaintiff and the Class.

89.    The FTC Act prohibits "unfair practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice of businesses, like ADT, of breaking promises in their privacy policies and failing to use adequate measures to protect private and sensitive customer information.

90.    ADT gathered and stored the Security Camera Footage of Plaintiff and the Class as part of its business in soliciting their services to its customers, which solicitations and services affect commerce.

91.    ADT violated the FTC Act by failing to use reasonable measures to protect the Security Camera Footage of Plaintiff and the Class and by not complying with applicable industry standards.

92.    ADT breached its duties to Plaintiff and the Class under the FTC Act by failing to provide fair, reasonable, or adequate systems, employee training, and data security protocols to safeguard Plaintiff's and Class Members' Security Camera Footage, and by failing to provide prompt notice of such failures without reasonable delay.

93.    Defendant's failure to comply with applicable laws and regulations constitutes negligence *per se*, as Plaintiff and the Class are within the class of persons the FTC Act was intended to protect.

94.    The harm that has occurred and will continue to occur as a result of Defendant's security failures is the type of harm the FTC Act was intended to guard against.

95.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class have suffered and continue to suffer damages arising from ADT's acts and omissions, as alleged throughout the Complaint.

96.    The injury and harm that Plaintiff and Class members suffered and continue to suffer are the direct and proximate result of Defendant's negligence *per se* and therefore Plaintiff and the Class are entitled to damages in an amount to be determined at trial.

## COUNT III – BREACH OF CONTRACT
### (ON BEHALF OF PLAINTIFF AND THE CLASS OR, ALTERNATIVELY, PLAINTIFF AND THE OKLAHOMA SUBCLASS)

97.    Plaintiff realleges and incorporates the foregoing paragraphs as though fully set forth herein.

98.    Plaintiff and Class Members each entered into valid and enforceable agreements with ADT to install and maintain a security system in their home and agreed to pay money for such services.

99.    A material part of the agreements entered into by the parties was to provide a security system that was not designed with flaws that would render it (or the Security Camera Footage produced therefrom) accessible by unauthorized users, resulting in the compromise of their privacy, safety and security.

100.    ADT also represented to Plaintiff that she would not be recorded unless an alarm was triggered.

101.    A meeting of the minds occurred, and Plaintiff and Class Members fully performed their obligations under the contract.

102.    ADT breached its contractual obligations with Plaintiff and Class Members by failing to communicate clearly to them that they would be recorded at all times of the day (whether an alarm was triggered or not), and by failing to acknowledge the inherent vulnerabilities in the ADT security system, including the ability of third parties to record and take pictures of Plaintiff and Class Members in their homes and/or receive confidential Security Camera Footage without Plaintiff's and Class Members' knowledge or consent.

103.    Plaintiff and the Class would not have paid for ADT's security system if they had been made aware of these vulnerabilities; they would have chosen one of the numerous alternatives available to them, which did not present a hidden safety risk.

104.    ADT's breach of contract, including its failure to fulfill its contractual promises and obligations to Plaintiff and Class Members as represented to them, resulted in Plaintiff and Class Members receiving services that were of less value than those for which they paid. In fact, the value of these "services" was reduced to zero.

105.    Stated otherwise, because Plaintiff and Class Members paid for privacy protections which they did not receive – despite such promised protections being a material part of the contracts at issue – they did not receive the full benefit of the bargain.

106.    As a result of ADT's breach, Plaintiff and Class Members suffered damages in the amount of the difference between the price paid for ADT's services as promised and the actual diminished value of the security services she received.

107.    Additionally, as a direct and proximate result of ADT's breach of contract, Plaintiff and the Class have also suffered and will continue to suffer injury, including but not limited to: (i) the cost of replacement security devices; (ii) the cost of additional surveillance and protective devices and services; and (iii) the time spent monitoring and addressing the current and future consequences of the exposure enabled by ADT and committed by ADT and its employees, along with the necessity to engage legal counsel and incur legal costs and fees.

**COUNT IV – INVASION OF PRIVACY (INTRUSION UPON SECLUSION)**
**(ON BEHALF OF PLAINTIFF AND THE CLASS OR, ALTERNATIVELY, PLAINTIFF AND THE**
**OKLAHOMA SUBCLASS)**

108.    Plaintiff realleges and incorporates the foregoing paragraphs as though fully set forth herein.

109.    Oklahoma establishes the right to privacy in the Oklahoma Constitution's Right to Privacy clause, which states that Oklahomans have the right to be secure in their persons, houses, papers, and effects. *See* Okla. Const. Art. II, Section 30.

110.    Oklahoma courts have found that, in addition to the state constitution, a common law right of privacy exists and that individuals may bring a cause of action for

invasion of that right. In fact, the Oklahoma Supreme Court adopted the Restatement of the Law of Torts (Second) and established four common law invasion of privacy claims in Oklahoma, including intrusion on solitude or seclusion.

111.    In Oklahoma, an intrusion upon seclusion claim has two elements: (i) a nonconsensual intrusion (ii) that is highly offensive to a reasonable person.

112.    Here, both of these elements are easily satisfied.

113.    Plaintiff and Class Members had a legitimate and reasonable expectation of privacy with respect to the conduct of their personal lives within the walls of their homes and were accordingly entitled to the protection of this privacy against disclosure to, and acquisition by, unauthorized third parties.

114.    ADT owed a duty to its customers, including Plaintiff and Class Members, to keep their Security Camera Footage confidential, and to only record and obtain such when an alarm was triggered (as opposed to all day, everyday recordings).

115.    Plaintiff and Class Members experienced a nonconsensual intrusion by ADT into their homes and private lives when ADT recorded and subsequently distributed the Security Camera Footage to their agents, employees, and other unauthorized third parties.

116.    The intrusion was into a place that was private and entitled to be private. Plaintiff and Class Members entered into contracts with ADT with the understanding and expectation that such recordings would only be made when necessary and would be kept confidential and protected from unauthorized access, acquisition, appropriation, disclosure, release, use, and/or viewing.

117.    Plaintiff and Class Members were reasonable in their belief that the Security Camera Footage would be kept private and would not be disclosed without their authorization.

118.    The unauthorized access, acquisition, appropriation, disclosure, release, use, and/or viewing of Plaintiff's and Class Members' Security Camera Footage is highly offensive to a reasonable person and constitutes a nonconsensual interference with Plaintiff's and Class Members' interest in solitude or seclusion, either as to their persons or as to their private affairs or concerns.

119.    ADT knew of its security system's vulnerabilities and knew that such vulnerabilities would cause injury to Plaintiff and Class Members.

120.    Unless and until enjoined and restrained by order of this Court, ADT's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that the Security Camera Footage now stored by ADT can continue to be accessed by, acquired by, appropriated by, disclosed to, released to, used by, and/or viewed by unauthorized persons.

121.    Plaintiff and the Class have no adequate remedy at law for the injuries sustained by ADT's invasion of their privacy in that a judgment limited only to monetary damages will not end the invasion of Plaintiff's and Class Members' privacy. Accordingly, Plaintiff and the Class are entitled to damages in an amount to be determined at trial, along with their costs and attorney fees incurred in this action and declaratory and injunctive relief as the Court deems appropriate.

### COUNT V – BREACH OF CONFIDENCE

29

**(ON BEHALF OF PLAINTIFF AND THE CLASS OR, ALTERNATIVELY, PLAINTIFF AND THE OKLAHOMA SUBCLASS)**

122.    Plaintiff realleges and incorporates the foregoing paragraphs as though fully set forth herein.

123.    At all times during Plaintiff's and Class Members' utilization of Defendant's services, Defendant was fully aware of the very confidential and sensitive nature of Plaintiff's and Class Members' Security Camera Footage.

124.    As alleged herein and above, Plaintiff and Class Members had an expectation that their Security Camera Footage, if collected upon the triggering of an alarm in the home, would be stored and protected in confidence and not disclosed to unauthorized third parties.

125.    ADT obtained the Security Camera Footage from Plaintiff and Class Members, a majority of which was obtained without their consent, with the expectation that ADT would protect and not permit the Security Camera Footage to be disseminated to unauthorized parties by taking precautions to protect the Security Camera Footage from unauthorized disclosure and following basic principles of data and account security.

126.    Defendant voluntarily received, in confidence, Plaintiff's and Class Members' Security Camera Footage onto its home monitoring systems with the understanding that the Security Camera Footage would not be disclosed or disseminated to the public or any unauthorized third parties.

127.    Due to Defendant's failure to prevent, detect, and/or avoid its system failures from occurring by, *inter alia*, failing to adequately train its employees, implement necessary data security protocols, and follow the industry's best practices to secure

Plaintiff's and Class Members' Security Camera Footage, Plaintiff's and Class Members' Security Camera Footage was disclosed and misappropriated to unauthorized parties and may have been further disseminated onto the internet, beyond Plaintiffs' and Class Members' confidence, and without their express permission.

128.    As a direct and proximate result of Defendant's actions and inactions, Plaintiff and Class Members have suffered damages.

129.    But for ADT's unauthorized disclosure of Plaintiff's and Class Members' Security Camera Footage in violation of the parties' understanding of confidence, their Security Camera Footage would not have been compromised, stolen, viewed, accessed, and/or used by unauthorized third parties. Defendant's security failures were the direct and legal cause of the distribution and compromise of Plaintiff's and Class Members' Security Camera Footage, as well as the resulting damages.

130.    The injury and harm Plaintiff and Class Members suffered was the reasonably foreseeable result of Defendant's unauthorized disclosure of Plaintiff's and Class Members' Security Camera Footage to third parties. Defendant knew its security camera systems, video access capabilities, and internal data security policies and protocols had numerous vulnerabilities.

131.    As a direct and proximate result of Defendant's breaches of confidence, Plaintiff and the Class have suffered injuries and damages arising from lost time and effort to mitigate the actual and potential impact ADT's security failures. Additionally, Plaintiff and Class Members have suffered mental anguish and emotional distress, loss of privacy, and other economic and non-economic losses, to be determined at trial.

## COUNT VI – VIOLATION OF OKLAHOMA CONSUMER PROTECTION ACT, OKLA. STAT. TIT. 15, CH. 20 ¶¶751, *ET SEQ.* (ON BEHALF OF PLAINTIFF AND THE OKLAHOMA SUBCLASS)

132.    Plaintiff realleges and incorporates the foregoing paragraphs as though fully set forth herein.

133.    Defendant ADT is a "person" as defined by Okla. Stat. tit. 15, § 752(1).

134.    ADT offers, sells, and distributes goods, services, and other things of value which constitute "consumer transactions" as meant by Okla. Stat. tit. 15, § 752(2).

135.    ADT, in the course of its business, engaged in unlawful practices in violation of Okla. Stat. tit. 15, § 753, including the following:

   a. Making false representations, knowingly or with reason to know, as to the characteristics, uses, and benefits of the subjects of their consumer transactions, in violation of Okla. Stat. tit. 15, § 753(5);

   b. Representing, knowingly or with reason to know, that the subjects of their consumer transactions were of a particular standard when they were of another, in violation of Okla. Stat. tit. 15, § 753(7);

   c. Advertising, knowingly or with reason to know, the subjects of their consumer transactions with intent not to sell as advertised, in violation of Okla. Stat. tit. 15, § 753(8);

   d. Committing unfair trade practices that offend established public policy and were immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers as defined by section 752(14), in violation of Okla. Stat. tit. 15, § 753(20); and

e.  Committing deceptive trade practices that deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person as defined by section 752(13), in violation of Okla. Stat. tit. 15, § 753(20).

136.  ADT's unlawful practices include all unlawful practices alleged herein, including but not limited to the failure to (i) identify foreseeable security and privacy risks inherent in their home monitoring systems, (ii) remediate identified security and privacy risks; and (iii) adequately improve its security and privacy measures following their previous system failures.

137.  Additionally, ADT misrepresented that it would record only when an alarm was triggered and that, following such recording, it would protect the privacy and confidentiality of Plaintiff's and Class Members Security Camera Footage when recorded and stored in its systems.

138.  Finally, ADT omitted, suppressed, and concealed the material fact that they did not reasonably or adequately secure Plaintiff's and Class Members' Security Camera Footage.

139.  ADT's misrepresentations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of its data security and ability to protect the confidentiality of Plaintiff's and Class Members Security Camera Footage.

140.  ADT intended to mislead Plaintiff and Class Members and induce them to rely on their misrepresentations and omissions.

141.  Had ADT disclosed to Plaintiff and Class Members that their system security protocols and procedures were not secure and, thus, were vulnerable to unauthorized

disclosure, Plaintiff and Class Members would not have purchased the products and services offered, and ADT would not have been able to continue in business without being forced to adopt reasonable system and data security measures.

142. The above unlawful practices and acts by ADT were immoral, unethical, oppressive, unscrupulous, and substantially injurious. These acts caused substantial injury to Plaintiff and Class Members.

143. Plaintiff and Class Members seek all monetary and non-monetary relief allowed by law, including actual damages, civil penalties, and attorney's fees and costs.

### COUNT VII – STATUTORY DECEIT
### VIOLATION OF 76 O.S. §§ 2, *ET SEQ.*
### (ON BEHALF OF PLAINTIFF AND THE CLASS OR, ALTERNATIVELY, PLAINTIFF AND THE OKLAHOMA SUBCLASS)

144. Plaintiff realleges and incorporates the foregoing paragraphs as though fully set forth herein.

145. ADT willfully deceived Plaintiff and Class Members with the intent to induce them to alter their position (pay money for the ADT home security system) as described above and ADT is therefore liable for the damages suffered by Plaintiff and the Class Members.

146. The sole purpose of ADT's statements, representations, and omissions was to operate a fraud and/or deceit upon Plaintiff and the Class.

147. The damages suffered by Plaintiff and Class Members were the kind that the laws of Oklahoma were intended to prevent.

148.    Accordingly, Plaintiff and Class Members are entitled to damages in an amount to be determined at trial.

**PRAYER FOR RELIEF, INCLUDING DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff Thompson, on behalf of herself and all others similarly situated, respectfully requests that the Court grant the following relief:

a.  Certify a nationwide class against ADT;

b.  Certify a subclass or subclasses against ADT;

c.  Award Plaintiff and the Class appropriate monetary relief, including actual damages, statutory damages, and punitive damages;

d.  Award Plaintiff and the Class equitable, injunctive and declaratory relief as may be appropriate; specifically, Plaintiff, on behalf of the Class, seeks appropriate injunctive relief designed to protect against the recurrence of a security system failure similar to the one alleged herein by the adoption and implementation, by ADT, of the best and most comprehensive security practices, policies, and protocols to safeguard customers' Security Camera Footage from unauthorized disclosure;

e.  Require ADT to create a fund sufficient to cover the costs of commercial and/or legal services needed to remedy the invasion of privacy that Plaintiff and Class Members have suffered, including (i) tracing the beginning and end points of the emails containing the Security Camera Footage; (ii) monitoring the internet for the distribution of the Security Camera Footage; (iii) taking down any such media that is posted, including implementation by ADT of commercial

"takedown services" available to monitor and control the spread of images and video across the internet; and (iv) providing any such further relief as the Court deems just and proper;

f.  Require Defendant to pay the costs involved in notifying the Class Members about the judgment and administering the claims process;

g.  Enter judgment in favor of Plaintiff and the Class awarding them pre-judgment and post-judgment interest, reasonable attorney fees, costs and expenses as allowably by law; and

h.  Any other favorable relief as allowable under law or at equity.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all appropriate issues raised in this Class Action Complaint.

Dated:  May 3, 2021                              Respectfully Submitted,

_____
William B. Federman, OBA # 2853
Tyler J. Bean, OBA # 33834
FEDERMAN & SHERWOOD
10205 N. Pennsylvania
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112
wbf@federmanlaw.com
tjb@federmanlaw.com

*Attorneys for Plaintiff and the Putative Class*

36